**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSEPH RINELLA, ) | |
|     Plaintiff, ) | |
|     v. ) | |
| ) | |
| CITY OF CHICAGO, CHARLES WAGNER, ) | |
|     Defendants. ) | **JURY DEMANDED** |

## CIVIL COMPLAINT

NOW COMES the Plaintiff, JOSEPH RINELLA, by and through his attorneys, Mary J. Grieb of

the Shiller Preyar Law Offices complaining of Defendants, and in support thereof states as

follows:

### INTRODUCTION

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

   1981 and 42 U.S.C. § 1983 to address deprivations of Plaintiff's rights under the

   Constitution of the United States and the laws of the State of Illinois.

### JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§

   1981 and 1983; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the

   United States; and pendent jurisdiction for state claims as provided in 42 U.S.C. §

   1367(a).

3. On February 11, 2016, Plaintiff filed a Charge of Discrimination with the Equal

   Employment Opportunity Commission. On February 25, 2016, the EEOC issued a Notice

   of Right to Sue on Plaintiff's charge, which was received by Plaintiff approximately

   February 26, 2016. (Attached as Exhibit A).

### VENUE

1

4. Venue is proper pursuant to 28 U.S.C. § 1391(b). The events alleged within all occurred in the Northern District of Illinois.

## THE PARTIES

5. Plaintiff Joseph Rinella is a United States citizen and employee of the City of Chicago.

6. Charles Wagner is a present employee of the City of Chicago. Defendant Wagner engaged in the conduct complained of while on duty, in the course and scope of his employment and under color of law. Defendant is sued in his individual capacity.

7. Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois, and is the employer and principal of Defendant Wagner. At all times relevant hereto, Defendant Wagner was acting under the color of law and within the scope of his employment with Defendant City of Chicago.

## BACKGROUND

8. Rinella was hired by the Bureau of Forestry in 1996.

9. Rinella received positive performance evaluations during his time in the Bureau of Forestry.

10. Rinella is proficient at trimming trees and in tree removal.

11. Rinella served under several supervisors without incident.

12. In early 2014, Wagner became the General Superintendent in the Department of Streets and Sanitation, Bureau of Forestry.

13. Before his promotion into the Bureau of Forestry, Wagner was the Superintendent in the 49th Ward in the City of Chicago.

14. From early 2014 to the present date, Wagner has been verbally and psychologically abusive towards Rinella.

15. Prior to May 20, 2015, while acting as a training agent, Rinella sat in on several staff meetings during which Rinella felt harassed and embarrassed by Wagner.

16. During staff meetings attended by approximately 15-20 colleagues, on several occasions, Wagner pointed to Rinella and stated words to the effect of "We've got to watch what we say in these meetings. Rinella is a Rat. He goes back and tells the union everything."

17. On May 20, 2015, while Rinella was waiting to be given his daily assignment by his direct supervisor, Wagner walked in and said, "It's 6:03, you're on my f***** time. Let's go, get to work."

18. In or around the spring of 2015, a grievance was filed against Charles Wagner for harassment and bullying.

19. On information and belief, prior to the above grievance, several complaints had been made about Wagner's abusive language and hostile management adversely affecting various employees of the Bureau of Forestry.

20. On June 1, 2015, Wagner told Rinella to report to 900 E. 103rd Street, which was far from Rinella's home.

21. On June 24, 2015, Wagner again called Rinella a rat.

22. Prior to that, Rinella had been acting as a training agent for a 90 day temporary period.

23. On August 14, 2015, Wagner criticized Rinella and then threatened to send Rinella to Gary, Indiana.

24. On August 21, 2015, when Rinella called Wagner to ask a question about assigning an employee returning from disability leave, Wagner said "What Rinella? Come on, what the fuck do you want? Make it quick. Let's go. What the fuck do you want?"

25. On or about August 22, 2015, Wagner yelled, screamed, and cursed at Rinella, and told Rinella, via text message, to report to 23rd and Ashland on Monday August 24th and to bring work clothes. Rinella had not performed physical labor on a truck since becoming an acting supervisor.

26. Rinella had been an acting supervisor only for a temporary basis and had not yet placed a bid for the position because the position had not been opened for bid at the time.

27. On August 24, 2015, Rinella complained to the City of Chicago Department of Human Resources that the City's policy against violence in the Workplace had been violated by Wagner.

28. On September 4, 2015, the City of Chicago sent Rinella correspondence stating that the conduct Rinella alleged did not fit the policy's definition of violence and thus no investigation would go forward.

29. On or about September 12, 2015, Rinella submitted a grievance to the City of Chicago concerning Wagner's hostile and abusive working environment.

30. In the grievance, Rinella alleged that he had been harassed by Wagner due in large part to Rinella's affiliation with union Laborer's Local 1001 and because of prior complaints regarding Wagner.

31. Additionally, in the grievance to the City of Chicago, Rinella also reported seeing Wagner abuse and harass other employees, including the following:

    a. Wagner called one supervisor a "fat slob" and "useless piece of shit," verbally abused him and told him that he should retire.

    b. Wagner verbally abused two other individuals, causing them to retire early.

32. In his September 12, 2015 grievance, Rinella asked the City of Chicago to address complaints of harassment against Wagner and take action to stop the harassment and resolve the hostile work environment.

33. On September 28, 2015, Charles Williams, Commissioner of Department of Streets and Sanitation, denied Rinella's grievance.

34. On September 29, 2015, the Union made a formal request for arbitration.

35. Beginning in approximately September of 2015, seven titled jobs (3 supervisor and 4 training agents) became open for bid in the Bureau of Forestry. Those jobs had not been open for bid for some time.

36. Wagner has effective control over the hiring process.

37. Wagner failed approximately 8 out of the top 10 people in seniority so that he could hire his friends for the titled jobs.

38. Wagner conducted training agent and supervisor interviews in October and November, 2015.

39. The bid process for the training agent position generally included three parts: a written test, a hands-on test, and an interview.

40. The bid process for the supervisor position generally included an essay question and an interview.

41. For the training agent position, Rinella passed the written test and the hands on test, which tested him on skills such as being up in trees and tying knots.

42. On information and belief, however, Rinella did not pass the verbal interview, which was attended by Wagner, Joe McCarthy and Mr. Crocker.

43. Wagner did not pass Rinella even though Rinella had the highest level of seniority for the position because Rinella had a grievance pending against Wagner, because of the complaints Rinella had made about Wagner and because of Rinella's political affiliations.

44. Wagner also passed over the person with the second highest seniority and who was well qualified so that Wagner could hire his friends.

45. In early November, 2015, Wagner ordered Rinella to go back on the truck.

46. Being "put on the truck" referred to a position as a physical laborer for the Bureau of Forestry.

47. Of the people eventually hired for titled jobs, some have never removed a tree or removed very few trees and are not qualified for such a dangerous job.

48. In November, 2015, Wagner hired several supervisors, including family friends who had limited or no experience with tree trimming and related duties.

49. Wagner also hired training agents who were not qualified for the position, including family friends.

50. Rinella continues to work as a tree trimmer in the Bureau of Forestry.

51. Rinella should have been hired as a training agent because he is well-qualified and has the most seniority.

52. The position of training agent earns more per hour than tree trimmer position, has more potential for overtime pay, and is a more desirable position.

53. Wagner has political connections to several aldermen and other elected City of Chicago officials.

54. As a result of Defendants' misconduct, Rinella has suffered severe emotional distress, embarrassment, humiliation, in addition to loss of wages and other compensation.

6

## COUNT I

### 42 U.S.C. § 1983 – First Amendment Retaliation

55. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

56. Plaintiff engaged in protected speech by filing certain complaints about the conduct of Wagner towards Plaintiff and Plaintiff's colleagues, including but not limited to complaints about Wagner's verbal abuse and derogatory language.

57. These complaints were made as a concerned citizen outside the scope of Rinella's employment.

58. Defendant Wagner intentionally did not promote Rinella, put Rinella back "on the truck" and caused a hostile work environment for Rinella.

59. Defendant Wagner performed these retaliatory actions while acting under color of law.

60. Plaintiff's protected speech was a reason, alone or with other reasons that Defendant Wagner relied on when he took retaliatory actions against Plaintiff.

61. As a result of the misconduct inflicted by Defendants, Plaintiff suffered emotional distress, economic damages and harm to his reputation.

WHEREFORE, Plaintiff demands judgment against Defendant Wagner for compensatory damages, punitive damages, attorneys' fees, costs, and such other and additional relief as this Court deems equitable and just.

## COUNT II
### 42 U.S.C. § 1983 - Equal Protection – Class of One

62. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

63. Defendant Wagner has targeted Plaintiff by discriminating against him in conditions of his employment, failing to promote him and causing him severe emotional distress.

64. Defendant Wagner intentionally treated Plaintiff differently than others similarly situated.

7

65. There was no rational basis for the difference in treatment.

66. Defendant Wagner was motivated by illegitimate animus against the Plaintiff.

67. The conduct and actions of Defendant Wagner was designed and intended to punish the plaintiff for filing a complaint and to chill his free exercise of the rights and privileges granted by the Constitution of the State of Illinois to those citizens of the United States residing in this state.

68. That conduct and those actions were designed and intended to deny the plaintiff the equal protection of the laws of the state of Illinois and the laws and rights granted under the Constitution and statues of the United States of America.

WHEREFORE, Plaintiff demands judgment against Defendant Wagner for compensatory damages, punitive damages, attorneys' fees, costs, and such other and additional relief that this Court deems equitable and just.

## COUNT III
## VIOLATION OF *SHAKMAN* CONSENT DECREE[1]

69. Plaintiff re-alleges and incorporates all previous paragraphs.

70. The consent decree entered in *Shakman et. al. v. Democratic Organization of Cook County et. al.,* 69 C 1343, and all associated judgments herein (hereafter *Shakman*), forbid, among other things, the Defendant City of Chicago from conditioning, basing or knowingly prejudicing or affecting any term or aspect of government employment, with respect to one who is at the time a governmental employee, upon or because of any political reason or factor.

---

[1] Although the City of Chicago was dismissed from *Shakman, et. al. vs. Democratic Organization of Cook County, et al.* 69 C 1343 in 2014, the otherwise City-wide dismissal and finding of substantial compliance exempted certain forestry supervisor positions that had to be rescinded and rebid at the time. *See Ibid [Dkt 3861] p.4.*

71. *Shakman* also forbids Defendant City of Chicago from knowingly inducing, aiding, abetting, or participating in, or cooperating with, or encouraging or threatening the commission of such act.

72. *Shakman* applies to the supervisor positions which had to be rescinded and re-bid, for which Rinella applied, and for which Rinella received notification final that he was not awarded in or around December of 2015.

73. The conduct of Defendant City of Chicago described herein violated *Shakman*.

74. In particular, Defendants gave the forestry supervisor positions at issue to friends over more qualified employees and/or more senior employees.

75. Defendants further discriminated against Plaintiff in his employment due to his political affiliation and activities and/or union.

WHEREFORE, Plaintiff prays for judgment against Defendants and respectively requests that this Court:

A. Declare the conduct of Defendant violated *Shakman*;
B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation from future violations of *Shakman* as to Plaintiff;
C. Order Defendant to make whole Plaintiff by providing affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;
D. Grant Plaintiff actual, consequential, compensatory, and any other damages that the Court may deem appropriate against Defendant;
E. Order Defendant to pay lost, foregone, and future wages to Plaintiff;
F. Order Defendant to pay punitive damages;
G. Grant Plaintiff his attorney's fees, costs, disbursements; and
H. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

<u>**COUNT IV**</u>
<u>**RETALIATION -- TITLE VII**</u>

76. Plaintiff re-alleges and incorporates all previous paragraphs.

77. Plaintiff exercised his statutorily protected rights by engaging in a protected activity by making oral and written complaints regarding a hostile work environment to the Defendants and their agents and employees on at least two occasions.

9

78. As a result of Plaintiff's reporting to the Defendants and their agents and employees, Plaintiff suffered adverse employment actions in that he was passed over for promotion and suffered a hostile work environment.

79. The aforementioned acts and omissions of Defendants constitute unlawful retaliation for Plaintiff's opposition to discrimination, harassment, and depriving Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.41.

80. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendants, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and emotional harm.

WHEREFORE, Plaintiff prays for judgment against Defendants and respectively requests that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;
B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates;
C. Order Defendant to make whole Plaintiff by providing affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;
D. Grant Plaintiff actual, consequential, compensatory, and any other damages that the Court may deem appropriate against Defendant;
E. Order Defendant to pay lost, foregone, and future wages to Plaintiff;
F. Order Defendant to pay punitive damages;
G. Grant Plaintiff his attorney's fees, costs, disbursements; and
H. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT V
## RETALIATION – SECTION 1981

81. Plaintiff re-alleges and incorporates all previous paragraphs.

10

82. Plaintiff exercised his statutorily protected rights by engaging in a protected activity by making oral and written complaints regarding a hostile work environment to the Defendants and their agents and employees on at least two occasions.

83. As a result of Plaintiff's reporting to the Defendants and their agents and employees, Plaintiff suffered adverse employment actions in that he was passed over for promotion and suffered a hostile work environment.

84. The aforementioned acts and omissions of Defendants constitute unlawful retaliation for Plaintiff's opposition to discrimination, harassment, and depriving Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of the provisions of Title VII of the Civil Rights Act of 1964,as amended, 42 U.S.C. §§ 2000e et seq.41.

85. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendants, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and emotional harm.

WHEREFORE, Plaintiff, prays for judgment against Defendants and respectively requests that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;
B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates;
C. Order Defendant to make whole Plaintiff by providing affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;
D. Grant Plaintiff actual, consequential, compensatory, and any other damages that the Court may deem appropriate against Defendant;
E. Order Defendant to pay lost, foregone, and future wages to Plaintiff;
F. Order Defendant to pay punitive damages;
G. Grant Plaintiff his attorney's fees, costs, disbursements; and
H. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT VI

### Illinois Whistleblower Act – 740 ILCS 174/10
### Against Defendant City of Chicago

86. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

87. On August 24, 2015, Plaintiff reported what he suspected were violations of Illinois law and city policy by Defendant Wagner.

88. Those suspected violations included but were not limited to violations of the City's violence in the workplace policy and laws against retaliation.

89. As a result of Plaintiff reporting suspected violations, he suffered adverse actions, including being passed over for promotion and subject to a hostile work environment.

WHEREFORE, Plaintiff demands judgment against the Defendant City of Chicago for compensatory damages, attorneys' fees and costs, and such other and additional relief as this Court deems equitable and just.

## COUNT VII

### State Claim – Intentional Infliction of Emotional Distress

90. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

91. The acts and conduct of Defendant Wagner set forth above were extreme and outrageous.

92. Said conduct included targeting Plaintiff for retaliation, creating a hostile work environment and failing to promote Rinella.

93. Defendant Wagner intended to cause, or was in reckless disregard of the probability that his conduct would cause, severe emotional distress to Plaintiff.

94. Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff and thereby constituted intentional infliction of emotional distress.

12

95. Defendant Wagner's conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

96. As a proximate result of Defendant Wagner's wrongful acts, Plaintiff suffered damages, including severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant Wagner for compensatory damages, costs, and such other and additional relief as this Court deems equitable and just.

## COUNT VIII
### Indemnity Claim - 745 ILCS 10/9-102 Against City of Chicago

97. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

98. Defendant City of Chicago is the employer of all Defendant Wagner.

99. Defendant Wagner committed the acts alleged above under color of law and in the scope of his employment as an employee of the City of Chicago.

100. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102.

101. As a proximate cause of Defendant Wagner's unlawful acts, which occurred within the scope of his employment activities, Plaintiff suffered physical and emotional injuries.

WHEREFORE, Plaintiff demands judgment against the City of Chicago for compensatory damages, attorney's fees, costs, medical expenses, and such other and additional relief as this court deems equitable and just.

## COUNT IX
### *Respondeat Superior* Liability Against City of Chicago
### for State Law Claims Against Defendant Wagner

102. Plaintiff re-alleges and incorporates all previous paragraphs.

103.    Defendant City of Chicago is the employer of Defendant Wagner.

104.    Defendant City of Chicago is liable for its employees' actions committed while in the scope of their employment as duly appointed police officers under the doctrine of *respondeat superior*.

105.    The acts of Defendant Wagner described in the state-law claims specified above were willful and wanton and committed in the scope of his employment as employee of the Defendant City of Chicago.

106.    As a proximate cause of the Defendant Wagner's unlawful acts, which occurred within the scope of his employment activities, Plaintiff was injured.

WHEREFORE, Plaintiff demands judgment against Defendant City for compensatory damages, costs, and such other and additional relief that this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

JOSEPH RINELLA
By One of His Attorneys:

s/Mary J. Grieb
Mary J. Grieb
The Shiller Preyar Law Offices
601 S. California Ave.
Chicago, Illinois 60612
312-226-4590