# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH RINELLA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16-cv-04088 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| CITY OF CHICAGO and ) | |
| CHARLES WAGNER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

This case concerns allegations of various workplace hostilities in the City of Chicago's Bureau of Forestry. Plaintiff Joseph Rinella, a tree-trimmer employed by Defendant City of Chicago ("City"), alleges that his supervisor, Defendant Charles Wagner, subjected him to verbal and psychological abuse and improper employment-related retaliation. Accordingly, Rinella has sued Wagner pursuant to 42 U.S.C. § 1983 for allegedly retaliating against him for exercising his First Amendment rights and for violations of the Equal Protection Clause.[1] Rinella also asserts claims against the City and Wagner under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"). Rinella additionally alleges that the City violated the consent decree it entered into in the litigation *Shakman v. Democratic Organization of Cook County*, Case No. 69-cv-02145 (N.D. Ill.). Finally, Rinella brings Illinois state law claims against the City for retaliation and against Wagner for intentional infliction of emotional distress. Before the Court is Defendants' motion to dismiss all of Rinella's claims under Federal Rule of Civil Procedure 12(b)(6). For reasons discussed below, the Court grants

---

[1] Rinella has voluntarily dismissed Count II of his Complaint, which asserts a class-of-one claim under the Equal Protection Clause. (Pl.'s Resp. at 10, Dkt. No. 19.) Therefore, the Court dismisses that claim without further discussion.

Defendants' motion in part and denies it in part.

## BACKGROUND[2]

Plaintiff Joseph Rinella is a tree trimmer working in the City's Department of Streets and Sanitation, Bureau of Forestry ("Forestry"). (Compl. ¶¶ 8, 50, Dkt. No. 1.) Rinella has been with Forestry since 1996 and for years worked under several supervisors without incident. (*Id.* ¶¶ 5, 11.) Then, in early 2014, Wagner became "General Superintendent" in Forestry, which was a supervisory role over Rinella. (*Id.* ¶¶ 6, 12.) Since then, according to Rinella, "Wagner has been verbally and psychologically abusive towards [him]." (*Id.* ¶ 14.) Specifically, Rinella alleges that Wagner used profanity, engaged in "harassment and bullying," "yelled, screamed, and cursed at [Rinella]," and "threatened to send [Rinella] to Gary, Indiana." (*Id.* ¶¶ 16–19, 21, 23–25.) Rinella also claims that on several occasions Wagner called him a "rat," complaining about the fact that Rinella reported occurrences to his union. (*Id.* ¶ 16.)

On August 24, 2015, Rinella complained to the City's Department of Human Resources that Wagner had violated the City's policy against violence in the workplace. (*Id.* ¶ 27.) The Department of Human Resources informed him that it could not open an investigation because Wagner's conduct did not constitute violence in the workplace per the City's policy. (*Id.* ¶ 28.) On September 12, 2015, Rinella "submitted a grievance to [the City] concerning Wagner's hostile and abusive working environment." (*Id.* ¶¶ 29–30.) In that grievance, Rinella stated that he "had been harassed by Wagner due in large part to [his] affiliation with union Laborer's Local 1001 and because of prior complaints regarding Wagner." (*Id.* ¶ 30.) Rinella also noted that Wagner had mistreated other employees and that the mistreatment had led two of the other employees to retire early. (*Id.* ¶ 31.) This grievance was also denied by the City. (*Id.* ¶ 33.)

---

[2] For the purposes of Defendants' motion to dismiss, the Court takes the allegations in Rinella's complaint as true and draws all reasonable inferences in his favor. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

Rinella alleges that he then suffered retaliation, specifically in the form of his failure to obtain promotions within Forestry, due to his filing of these complaints. Beginning in September 2015, seven jobs—three supervisor positions and four training agent positions—opened up in Forestry. (*Id.* ¶ 35.) The application process for the training agent positions consisted of three parts: a written test, a hands-on test, and an interview. (*Id.* ¶ 39.) Rinella passed the written test and the hands-on test, but he does not believe that he passed the verbal interview. (*Id.* ¶¶ 41–42.) According to Rinella, Wagner had "effective" control over the hiring process and refused to hire Rinella because of the complaints Rinella filed against Wagner and Rinella's "political affiliations." (*Id.* ¶ 43.) Rinella further alleges that he should have been hired as a training agent based on his qualifications and seniority. (*Id.* ¶ 51.)

In addition, Rinella states that the application process for the supervisor position was composed of an essay question and an interview. (*Id.* ¶ 40.) But Rinella provides no detail about his application for the supervisor positions; indeed, he does not even allege that he actually applied for these positions. He does allege, however, that Wagner picked friends for these supervisor roles over more qualified individuals. (*Id.* ¶ 74.)

## DISCUSSION

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, the short plain statement must overcome two hurdles. First, the complaint's factual allegations must be enough to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id.* This pleading standard does not necessarily require a

3

complaint to contain "detailed factual allegations." *Id.* (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As mentioned above, Rinella brings claims for First Amendment retaliation against Wagner (Count I); violations of the *Shakman* consent decree against Wagner and the City (Count III); and unlawful retaliation under Title VII and Section 1981 against Wagner and the City (Counts IV and V, respectively). Rinella also brings Illinois state law claims for unlawful retaliation under the Illinois Whistleblower Act, 740 ILCS 174/10, against the City (Count VI); intentional infliction of emotional distress against Wagner (Count VII); and indemnity and *respondeat superior* liability against the City (Counts VIII and IX, respectively). The Court addresses these claims in turn.

### I. First Amendment Retaliation Claim

The First Amendment protects freedom of speech and expressive conduct, and generally prevents the government from proscribing such activities. *RAV v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992). "The Supreme Court has made clear that public employees do not surrender all of their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Morales v. Jones*, 494 F.3d 590, 595 (7th Cir. 2007). "In such circumstances, an employer may not retaliate against an employee for engaging in protected speech." *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 509 (7th Cir. 2007). To prevail on a claim of retaliation under the First Amendment, a plaintiff must establish that: (1) she engaged in a

4

protected activity; (2) she suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the two. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010).

Defendants here contend that Rinella's claim must be dismissed because he did not engage in any activity protected by the First Amendment. To show that his public-employee speech is protected, "the employee must establish that [he] spoke as a citizen on a matter of public concern." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "[T]he threshold inquiry is whether the employee was speaking as a citizen; only then do we inquire into the content of the speech [to determine if the speech related to a matter of public concern]." *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) (citation omitted). "[P]ublic employees speaking 'pursuant to their official duties' are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content of their speech." *Id.* (citing *Garcetti*, 547 U.S. at 410). "The Supreme Court has defined 'public concern' to mean 'legitimate news interest,' or 'a subject of general interest and of value and concern to the public at the time of publication.'" *Kubiak*, 810 F.3d at 482–83 (internal citations omitted). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement . . . ." *Id.* at 483 (citing *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

Defendants argue that Rinella's speech was not protected by the First Amendment because he was speaking in his capacity as a public employee and not a private citizen. But Rinella alleges that one of the reasons Wagner harassed him and refused to promote him was due to his affiliation with his union and participation in union activities. (Compl. ¶¶ 16, 30, 75, Dkt. No. 1.) In particular, Rinella claims that Wagner frequently and derogatorily voiced his objection to the fact

5

that Rinella reported to his union what was going on at Forestry. (*Id.* ¶ 16.) When Rinella was communicating with his union about his workplace, he was speaking as a private citizen. *Swetlik v. Crawford*, 738 F.3d 818, 826 (7th Cir. 2013) (holding that statements "made in [] capacity as a union member" are not part of official duties and thus made in capacity as private citizen); *see also Shefcik v. Vill. of Calumet Park*, 532 F. Supp. 2d 965, 974 (N.D. Ill. 2007) (holding that officer speaking as union representative "is speaking as a citizen, not as an employee"); *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009) (same).

Defendants also contend that Rinella's speech did not touch a matter of public concern because it amounted to nothing more than personal grievances intended only to benefit Rinella himself. With this argument, Defendants address Rinella's grievances and complaints to the City but they do not address his communications with his union. To be sure, the Complaint does not elucidate what exactly Rinella told his union. However, the Complaint does indicate that Rinella reported "everything" to his union. (Compl. ¶ 16, Dkt. No. 1.) Moreover, the Complaint explicitly alleges, *inter alia*, that Rinella complained to the City that Wagner was promoting unqualified family friends at the expense of others, that Rinella was being retaliated against because of his union membership, and about Wagner's severe verbal abuse of other employees. (*Id.* ¶¶ 48, 49, 74; *id.* ¶¶ 16, 30, 75; *id.* ¶¶ 16, 75; *id.* ¶ 31.)

Inferring that Rinella also conveyed these grievances to his union, his speech arguably touched issues of public concern. Nepotism in government hiring clearly addresses an issue of public concern. *Brooks v. Univ. of Wisc. Bd. of Regents*, 406 F.3d 476, 479 (7th Cir. 2005) (holding that government corruption is a quintessential matter of public concern). So too does Rinella's reporting that he—a government employee—was suffering adverse employment consequences for his membership with the union, as that would be "of general interest and of

value and concern to the public." *Kubiak*, 810 F.3d at 482–83; *see also Shub v. Westchester Cmty. College*, 556 F. Supp. 2d 227, 246 (S.D.N.Y. 2008) ("Retaliation against public employees solely for their union activities violates the First Amendment."); *Donovan v. Inc. Vill. of Malverne*, 547 F. Supp. 2d 210, 218 (E.D.N.Y. 2008) (stating that union membership, in and of itself, satisfies the public concern requirement). And although reporting singular instances of abuse in the workplace may not touch an issue of public concern, reporting systemic abuses can be of public concern. Thus, drawing all reasonable inferences in Rinella's favor, the Complaint plausibly states a claim for First Amendment retaliation on the theory that Rinella was retaliated against for his communications with his union and that those communications touched on matters of public concern.

## II. *Shakman* Consent Decree Violation

Rinella also claims that the City[3] violated the *Shakman* consent decree by wrongfully denying him promotions to the "training agent" and "forest supervisor" positions. As Rinella recognizes, the City was dismissed from the *Shakman* litigation in June 2014. (Order, Dkt. No. 3861, *Shakman, et al. v. Democratic Org. of Cook County, et al.*, Case No. 69-cv-02145 (N.D. Ill.) ("*Shakman* Dismissal").) However, the *Shakman* Dismissal contains the following carve out:

> Notwithstanding anything set forth herein, the rights and remedies set forth in Section IV of the Accord shall apply to City employees who participated in the Department of Streets and Sanitation, Bureau of Forestry hiring sequences of the ***Forestry Supervisor positions that have been rescinded and are in the process of being redone***. Any such employee may submit an Accord Complaint or file suit to enforce the Accord within 180 days of the date the City provides such employee written notice of its final decision.

(*Shakman* Dismissal ¶ 9 (emphasis added).)

---

[3] Insofar as Rinella purports to bring a claim against Wagner under the *Shakman* consent decree, his claim is dismissed. Wagner was not a party to that consent decree and cannot be held personally liable for alleged violations of the decree. *Hernandez v. O'Malley*, 98 F.3d 293, 294 (7th Cir. 1996); *Plotkin v. Ryan*, 1999 WL 965718, at *7 (N.D. Ill. Sept. 29, 1999).

7

Under the *Shakman* Dismissal, Rinella's claim based on his application for a training agent position fails, as the City has been dismissed from the *Shakman* consent decree with respect to that job title. Rinella nonetheless argues that the training agent position is actually a variety of the forest supervisor position discussed in the carve-out. He further contends that even if he is ultimately mistaken in that argument, it is a fact question inappropriate for resolution at this stage of the litigation. The Court disagrees. First, the interpretation of a district court's order is a question of law for this Court. *See, e.g.*, *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008) ("The interpretation of a district court's order is a question of law . . . ."). Substantively, the *Shakman* Dismissal specifically identifies the positions subject to the carve-out as "Forestry Supervisor positions."[4] Rinella's own Complaint indicates that the training agent position was a separate and distinct position from the forestry supervisor position. (*See, e.g.*, Compl. ¶¶ 35, 38, 39, 40 (stating that Forestry had two types of openings, for forestry supervisor as opposed to training agent, and describing their different hiring procedures).) Thus, applying the plain reading of the *Shakman* Dismissal to Rinella's own allegations, the carve-out does not apply to the training agent position, and Rinella's claim relating to his application to the training agent position fails.

Rinella's claim based on the denial of his forest supervisor application also fails but for a different reason: his allegations do not plausibly state that he was denied the position due to his political affiliations. Indeed, Rinella does not even allege that he applied for the Forestry Supervisor position. Even if he did, his Complaint merely states that Wagner improperly favored his friends for these positions—which is not the same as favor based on political affiliation. Thus, Rinella's claims arising under the *Shakman* consent decree are dismissed.

---

[4] Notably, it is not enough that Rinella was applying for a "Forestry Supervisor" position—he needs to have applied to a Forestry Supervisor position that was "rescinded and [] in the process of being redone."

**III.     Title VII and Section 1981 Retaliation Claims**

Rinella also asserts retaliation claims under Title VII and Section 1981. Title VII prohibits discrimination based on an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Section 1981 applies to allegations of discrimination based on race . . . ." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006), *as amended on denial of reh'g* (May 25, 2006). Rinella has not alleged that he, himself, was discriminated against based on any of the protected grounds. Rather, Rinella argues that he was retaliated against because he opposed Title VII and Section 1981 violations perpetuated against himself and others.

Title VII relevantly states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants . . . [or] any individual, because he has opposed any practice made an unlawful employment practice ***by this subchapter*** . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing ***under this subchapter***.

42 U.S.C. § 2000e–3 (emphasis added). Section 1981 similarly prohibits "retaliation for opposing discriminatory practices that [Section 1981] proscribe[s]." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008)). Thus, to proceed under a retaliation theory, Rinella must allege that he opposed an employment practice prohibited by Title VII or Section 1981. He has not done so. He only alleges that he reported Wagner's conduct in severely berating him and other employees, without any indication that the abuse was based on any of the protected grounds of race, color, religion, sex, or national origin. Even if Wagner's behavior was wrongful, that alone is not enough to state a claim under Title VII or Section 1981.

Rinella protests that he believed Wagner's conduct was wrongful under Title VII and Section 1981 and that is enough to support his retaliation claim. Again he is mistaken, and the

9

cases he cites do not support his position. Both *Fine v. Ryan International Airlines*, 305 F.3d 746 (7th Cir. 2002), and *Berg v. LaCrosse Cooler Co.*, 612 F.2d 1041 (7th Cir. 1980), stand for the proposition that if a complainant reasonably believed they were opposing a Title VII (or, by analogy, a Section 1981) violation, then they cannot be retaliated against for such opposition.

In *Fine*, the Seventh Circuit found that a complainant could proceed on her Title VII retaliation claim, even though the underlying conduct that was the subject of her complaint did not in fact violate Title VII. 305 F.3d at 752. There, the plaintiff filed a Title VII suit against her employer alleging sexual harassment, sex discrimination, and retaliation based on her participation in opposing the alleged harassment and discrimination. *Id.* at 751. The district court granted the employer summary judgment on the first two claims, finding that the sexual harassment claims were time-barred and that the employee had failed to adduce evidence sufficient to sustain the sex discrimination claims. *Id.* But the court nonetheless denied summary judgment on the retaliation claim; that claim proceeded to trial where a jury returned a verdict in the plaintiff's favor. *Id.* The employer appealed the denial of summary judgment on the retaliation claim, arguing that, in light of the district court's grant of summary judgment on the underlying harassment and discrimination claims, the plaintiff could not have held a reasonable belief that the complained-of conduct violated Title VII. *Id.* The Seventh Circuit rejected this argument. *Id.* at 752. Detailing the robust factual basis on which the plaintiff brought her claim, the Seventh Circuit concluded that, although ultimately unsuccessful, she could reasonably have believed that her employer was engaging in unlawful sex discrimination. *Id.*

In *Berg*, the Seventh Circuit held that a complainant could proceed on a Title VII retaliation claim, even if her Title VII claim based on the discrimination about which she complained failed as a matter of law. 612 F.2d at 1043. In that case, the plaintiff opposed the

10

discrimination of her coworker based on the coworker's pregnancy and was subsequently discharged for that opposition. *Id.* at 1041–42. The plaintiff filed suit against her employer, principally arguing that, because discrimination on account of pregnancy is a type of sex discrimination, she was unlawfully retaliated against for opposing discrimination that violated Title VII. *Id.* at 1042. Subsequent to the plaintiff filing her suit, the Supreme Court in *General Electric Co. v. Gilbert*, 429 U.S. 125, 145–46 (1976), rejected the determination of the Equal Employment Opportunity Commission and numerous lower courts to hold that discrimination on the basis of pregnancy and maternity did not violate Title VII.[5] *Id.* at 1043. In light of the Supreme Court's holding, the district court granted summary judgment to the employer on the retaliation claim, reasoning that the employer's conduct in discriminating against an employee based on her pregnancy could not have constituted unlawful discrimination and so the plaintiff could not have been opposing unlawful discrimination. *Id.* at 1045. The Seventh Circuit disagreed, stating that a retaliatory discharge based on a plaintiff's opposition to conduct that she reasonably believed to violate Title VII is prohibited, even if as a legal matter there was no Title VII violation. *Id.* Given that the weight of the authority when the plaintiff opposed the discrimination against her coworker supported the position that discrimination based on pregnancy violated Title VII, the Seventh Circuit concluded that the plaintiff could have reasonably believed she was opposing a Title VII violation, in which case she should be protected from retaliation. *Id.* Thus, the Seventh Circuit reversed the district court's grant of summary judgment and allowed the plaintiff's claim to proceed. *Id.*

The lessons from *Fine* and *Berg* do not save Rinella's claim. He has not plausibly alleged that he reasonably believed that there were Title VII or Section 1981 violations afoot at his

---

[5] Afterwards, Congress amended Title VII, effective October 31, 1978, to provide expressly that Title VII sex discrimination includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

11

workplace. Unlike in *Fine*, Rinella has presented no factual basis at all to support that anyone was discriminated against on one of the statutorily-protected grounds (*i.e.*, race, color, religion, sex, or national origin). And, unlike in *Berg*, Rinella's purported belief that his employer's abusive conduct violated Title VII or Section 1981—even though the conduct had no apparent basis in the targeted employees' race, color, religion, sex, or national original—was simply not reasonable under any interpretation of the law. The text of the statutes and the case law clearly set forth that to proceed on a Title VII or Section 1981 claim the alleged discrimination must be on the basis of a statutorily-protected ground. *See, e.g.*, *Jennings v. Sallie Mae, Inc.*, 358 F. App'x 719, 721 (7th Cir. 2009) (stating that dismissal of Title VII and Section 1981 claims is proper when complaint fails to allege discrimination on basis of protected grounds). Thus, Rinella's Title VII and Section 1981 claims are dismissed.

## IV.  Illinois State Law Claims

Defendants do not raise any substantive arguments for the dismissal of Rinella's Illinois state law claims. Instead, they argue simply that because the federal claims should be dismissed, the Court should not exercise supplemental jurisdiction over the Illinois state law claims. (Defs.' Memo. in Supp. Mot. to Dismiss at 15, Dkt. No. 14.) As the Court has denied Defendants' motion to dismiss as to the federal law claim in Count I, however, the Court will exercise supplemental jurisdiction over Rinella's state law claims and therefore denies Defendants' motion to dismiss in this regard. *See* 28 U.S.C. § 1367(a).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 13) is granted in part and denied in part. The Court grants the motion with respect to Counts II, III, IV, and V of the Complaint, but denies the motion with respect to Counts I, VI, VII, VIII, and IX. The dismissals

are without prejudice. Rinella may amend his Complaint, if he can do so consistently with the requirements of Federal Rule of Civil Procedure 11.

ENTERED:

Dated: December 14, 2016

_____
Andrea R. Wood
United States District Judge